HADDEN v McDERMITT APARTMENTS, LLC

Docket No. 286474. Submitted September 1, 2009, at Lansing. Decided January 12, 2010, at 9:05 a.m.

Kathryn Hadden brought an action in the Genesee Circuit Court, Geoffrey L. Neithercut, J., against McDermitt Apartments, LLC, seeking damages for injuries sustained when plaintiff, a tenant living on the second floor of defendant's apartment building, slipped and fell on black ice when using an outdoor stairway attached to the building. The court denied defendant's motion for summary disposition with regard to plaintiff's common-law premises liability claim and claims that defendant violated statutory duties to keep the stairway in reasonable repair, under MCL 554.139(1)(b), and to keep the stairway fit for its intended use, under MCL 554.139(1)(a). Defendant moved for reconsideration, arguing that application of the decision in *Allison v AEW Capital Mgt, LLP*, 481 Mich 419 (2008), issued the same day that the trial court denied the motion for summary disposition, would result in a different outcome on reconsideration. The trial court granted the motion, in part, and eventually held that, pursuant to *Allison*, defendant had no statutory duty to keep the stairway in reasonable repair under MCL 554.139(1)(b). The trial court further held that, under MCL 554.139(1)(a), defendant had a duty to keep the stairway fit for its intended use. The trial court also found the conclusion reached in *Allison*—that one to two inches of snow did not render a parking lot unfit for its intended use— distinguishable, noting that the facts in this case included black ice, not just snow, and the intended use of the stairway of easy ingress to and egress from the upstairs apartments was different from the use of the parking lot in *Allison*. Finally, the trial court held that plaintiff waived her arguments against defendant's open and obvious danger defense because she cited no caselaw supporting her position. Defendant appealed by leave granted with regard to the issue whether the trial court's decision to deny summary disposition regarding MCL 554.139(1)(a) was erroneous given its finding that there is a material distinction between the facts of this case and those in *Allison*.

The Court of Appeals *held*:

1. The primary purpose or intended use of a stairway is to provide pedestrian access to different levels of a building or

structure. MCL 554.139(1)(a) does not require perfect mainte-
nance of a stairway. A stairway need not be in ideal condition, nor
in the most accessible condition possible, but it must provide
tenants reasonable access to different building levels.

2. The trial court properly determined that plaintiff produced
enough evidence to create a material question of fact whether the
stairway was fit for its intended use at the time of plaintiff's fall.
Reasonable minds could conclude that the presence of black ice on
a darkly lit, unsalted stairway—possibly caused or aggravated by
overflowing ice water from overhead gutters in the presence of
freezing rain—posed a hidden danger that denied reasonable
access to different levels of the building and rendered the stairway
unfit for its intended use. The trial court properly denied summary
disposition with regard to whether the stairway was fit for its
intended use.

3. This case is factually distinguishable from *Allison*.

Affirmed.

METER, J., dissenting, stated that *Allison* controls the outcome
of this case and mandates that defendant should have been
granted summary disposition. This case is not materially distin-
guishable from *Allison*. First, the principles from *Allison* apply not
just to parking lots but to all common areas on leased premises,
including the stairway at issue. Second, plaintiff's assertion of
unfitness was based on alleged facts similar to those set forth in
*Allison*, i.e., she relied solely on the alleged facts that the stairs
were icy and that she fell. Finally, like the parking lot in *Allison*,
the stairway here was suitable for its intended use. Plaintiff did
not show that the condition of the stairway precluded her ability to
use the stairway to access different levels of the building. The
stairway was not rendered unfit for its purpose simply because of
the presence of some amount of ice that required a careful
navigation of the steps. The order of the trial court should be
reversed and the case should be remanded to the trial court for the
entry of a judgment in favor of defendant.

LANDLORD AND TENANT — COMMON AREAS — STAIRWAYS — STATUTORY DUTIES —
BLACK ICE.

A lessor of leased residential property has a statutory duty to keep
all common areas fit for the use intended by the parties to the
lease; the primary purpose or intended use of a common area
stairway is to provide pedestrian access to different levels of the
building or structure; the statutory duty does not require perfect
maintenance of such a stairway and the stairway need not be in an
ideal condition, nor in the most accessible condition possible, but it

must provide reasonable access to different building levels; the presence of black ice on a darkly lit, unsalted stairway might pose a hidden danger that denies tenants reasonable access to different levels of a building and renders the stairway unfit for its intended use (MCL 554.139[1][a]).

*Mindell, Malin, Kutinsky, Stone & Blatnikoff* (by *Randall I. Stone*) for plaintiff.

*Feuer & Kozerski, PC* (by *Scott L. Feuer*), for defendant.

Before: MURPHY, P.J., and METER and BECKERING, JJ.

BECKERING, J. Defendant appeals by leave granted the trial court's order denying its motion for summary disposition with regard to plaintiff's claim that defendant breached its statutory duty under MCL 554.139(1)(a). We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

Plaintiff was a tenant in an upstairs apartment of defendant's building. After twice calling defendant to complain about the presence of snow and ice on an outdoor stairway attached to the building, plaintiff slipped and fell on black ice when using the stairway. She fractured her left hip.

Plaintiff sued defendant for breach of its common-law duty to use reasonable care as a premises owner and also its statutory duty as a landlord to keep the premises and common areas fit for their intended use and the premises in reasonable repair under MCL 554.139(1)(a) and (b). Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that the hazard was open and obvious, so it could not be held liable under a common-law premises liability theory. Defen-

dant also argued that it was not liable under MCL 554.139(1) because its statutory duty did not extend to snow and ice removal.

Initially, the trial court completely denied defendant's motion, but on the same day the trial court entered its order, our Supreme Court issued its decision in *Allison v AEW Capital Mgt, LLP*, 481 Mich 419; 751 NW2d 8 (2008). Defendant moved for reconsideration, arguing that applying *Allison* would change the outcome of the trial court's decision.

The trial court granted in part defendant's motion for reconsideration. It concluded, pursuant to the Court's holding in *Allison*, that defendant had no statutory duty to keep the stairway in reasonable repair under MCL 554.139(1)(b). However, under MCL 554.139(1)(a), defendant had a duty to keep the stairway fit for its intended use. The trial court found the conclusion reached in *Allison*—that one to two inches of snow did not render a parking lot unfit for its intended use—distinguishable. The facts here included black ice, not just snow, and the intended use of easy ingress to and egress from the upstairs apartments was different from that of the parking lot in *Allison*. The trial court noted that, by its own terms, the statute is to be "liberally construed," quoting MCL 554.139(3). Finally, the trial court concluded that plaintiff had waived her arguments against defendant's "open and obvious danger" defense because she cited no caselaw supporting her position.

In this Court, the only issue properly presented is whether the trial court's decision regarding MCL 554.139(1)(a) was erroneous given its finding that there is a material distinction between the facts here and those in *Allison*.

We review de novo a trial court's decision to grant or deny a motion for summary disposition. *Spiek v Dep't of*

*Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Although we view substantively admissible evidence submitted at the time of the motion in the light most favorable to the party opposing the motion, the non-moving party must come forward with at least some evidentiary proof, some statement of specific fact upon which to base his or her case. *Maiden v Rozwood*, 461 Mich 109, 119-121; 597 NW2d 817 (1999); *Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994).

"MCL 554.139 provides a specific protection to lessees and licensees of residential property in *addition* to any protection provided by the common law." *Allison*, 481 Mich at 425 (emphasis in original). MCL 554.139 provides, in relevant part:

> (1) In every lease or license of residential premises, the lessor or licensor covenants:

> (a) That the premises and all common areas are fit for the use intended by the parties.

> * * *

> (3) The provisions of this section shall be liberally construed . . . .

For common areas, "the lessor effectively has a contractual duty to keep the [area] 'fit for the use intended by the parties.' " *Allison*, 481 Mich at 429, quoting MCL 554.139(1)(a).

Our Supreme Court in *Allison* made it clear that an accumulation of snow and ice could implicate a landlord's duty to keep the premises and all common areas fit for the use intended. *Allison*, 481 Mich at 438.[1] In

---

[1] *Allison* also clarified that the "open and obvious danger" doctrine does not obviate a landlord's statutory duty under MCL 554.139. *Allison*, 481 Mich at 425.

*Allison,* at issue was whether "one to two inches of accumulated snow" in an apartment complex parking lot made the parking lot unfit for its intended use. *Id.* at 423. While the majority of justices agreed that the presence of snow and ice could make a parking lot unfit for its intended use, the Supreme Court held that the facts in *Allison* did not establish that tenants were unable to use the parking lot for its intended purpose:

> A parking lot is constructed for the primary purpose of storing vehicles on the lot. "Fit" is defined as "adapted or suited; appropriate[.]" *Random House Webster's College Dictionary* (1997). Therefore, a lessor has a duty to keep a parking lot adapted or suited for the parking of vehicles. A parking lot is generally considered suitable for the parking of vehicles as long as the tenants are able to park their vehicles in the lot and have reasonable access to their vehicles. A lessor's obligation under MCL 554.139(1)(a) with regard to the accumulation of snow and ice concomitantly would commonly be to ensure that the entrance to, and the exit from, the lot is clear, that vehicles can access parking spaces, and that tenants have reasonable access to their parked vehicles. Fulfilling this obligation would allow the lot to be used as the parties intended it to be used.

> In this case, in construing the meaning of these terms in the contract, neither of the parties has indicated that the intended use of the parking lot was anything other than basic parking and reasonable access to such parking. Plaintiff's allegation of unfitness was supported only by two facts: that the lot was covered with one to two inches of snow and that plaintiff fell. Under the facts presented in this record, we believe that there could not be reasonable differences of opinion regarding the fact that tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles. Accordingly, plaintiff has not established that tenants were unable to use the parking lot for its intended purpose, and his claim fails as a matter of law.

While a lessor may have some duty under MCL
554.139(1)(a) with regard to the accumulation of snow and
ice in a parking lot, it would be triggered only under much
more exigent circumstances than those obtaining in this
case. The statute does not require a lessor to maintain a lot
in an ideal condition or in the most accessible condition
possible, but merely requires the lessor to maintain it in a
condition that renders it fit for use as a parking lot. Mere
inconvenience of access, or the need to remove snow and ice
from parked cars, will not defeat the characterization of a
lot as being fit for its intended purposes. [*Id.* at 429-430.]

While the *Allison* Court specifically referenced park-
ing lots, the principles set forth apply to all common
areas, including stairways. The primary purpose or
intended use of a stairway is to provide pedestrian
access to different levels of a building or structure. As
with a parking lot, MCL 554.139(1)(a) does not require
perfect maintenance of a stairway. The stairway need
not be in an ideal condition, nor in the most accessible
condition possible, but, rather, must provide tenants
"reasonable access" to different building levels. See
*Allison*, 481 Mich at 430. We must ascertain whether
there could be reasonable differences of opinion regard-
ing whether the stairway was fit for its intended use of
providing tenants with reasonable access under the
circumstances presented at the time of plaintiff's fall.

Plaintiff testified that she lived on the second floor of
defendant's apartment building. In order to access her
mailbox on the first floor, plaintiff used the stairway in
question, which consisted of approximately 12 open
steps located outside the building but covered by a roof.
Plaintiff testified that the day before the fall, she left
her apartment to check her mail and noted the presence
of snow on all the stairs of the stairway. Although she
was able to use the stairway without incident, plaintiff
called defendant and complained to "Lori" about the

presence of snow and ice on the stairway.[2] She was told that "Scott" would take care of it when he had the time.

Plaintiff testified that on the day of the fall, before she had left her apartment, she again called and notified defendant about the presence of snow and ice on the stairway. Plaintiff produced weather data indicating that preceding her fall, temperatures were at or below freezing, and the area experienced episodes of light freezing rain and at one point "ice pellets." At approximately 1:00 p.m. on December 1, 2006, plaintiff left her apartment to check her mail. She noticed "lots of snow" that was "fresh," and that there was "more than a couple of inches" on the second floor as she walked toward the stairway. Plaintiff descended the stairway and checked her mailbox. Plaintiff's testimony was conflicting on the issue whether she noticed snow or ice on the stairway before her fall. On her way back up the stairway, plaintiff used the right side of the stairway so that she could use the handrail. As she reached the second step, plaintiff slipped and fell on ice, fracturing her left hip. She testified that she did not see the ice before her fall because it was black ice and the stairway was too dark. As she fell, however, plaintiff noticed that the gutters overhead were overflowing with water and icicles had formed. Plaintiff testified that there was no salt on the stairway at the time of her fall.

Defendant concedes that for purposes of this appeal, plaintiff's testimony must be accepted as true and the evidence presented must be viewed in the light most favorable to plaintiff. We agree with the trial court that plaintiff has produced enough evidence to create a

---

[2] While it appears plaintiff contradicted herself at times throughout her deposition, neither party produced the entirety of plaintiff's deposition; therefore, the facts cited are gleaned from the available testimony presented to this Court.

material question of fact whether the stairway was fit for its intended use at the time of plaintiff's fall. As stated earlier, the primary purpose of a stairway is to provide pedestrians reasonable access to different levels of a building or structure. Reasonable minds could conclude that the presence of black ice on a darkly lit, unsalted stairway—possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger that denied tenants reasonable access to different levels of the apartment building and rendered the stairway unfit for its intended use.

This case is factually distinguishable from *Allison* because black ice on a stairway presents more than the "[m]ere inconvenience" posed by "one to two inches of snow" in a parking lot. See *Allison*, 481 Mich at 423, 430. Furthermore, as the Court stated in *Allison*, the primary use of a parking lot is to park cars. *Id.* at 429. Although the Court recognized that tenants must have reasonable access to their vehicles in a parking lot, i.e., they must be able to walk to the vehicles, *id.*, tenants do not use a parking lot for its intended use by merely walking in the lot. Walking in a parking lot is secondary to the parking lot's primary use. In contrast, a tenant uses a stairway for its intended use solely by walking up and down it. Thus, the primary purpose of a stairway is for walking. Indeed, the primary purposes and, therefore, intended uses of a parking lot and a stairway are two different things.

Therefore, under all the circumstances presented here, the snow- and ice-covered stairway may not have been fit for its intended use at the time of plaintiff's fall. We agree with the trial court that this issue presents a material question of fact for the jury.

Affirmed.

MURPHY, P.J., concurred.

METER, J. (*dissenting*). I conclude that *Allison v AEW Capital Mgt, LLP*, 481 Mich 419; 751 NW2d 8 (2008), controls the outcome in this case and mandates that defendant be granted summary disposition. Accordingly, I respectfully dissent.

As noted by the majority, the only issue in this case involves the application of MCL 554.139(1)(a), which requires a landlord to ensure that common areas on leased premises are "fit for the use intended by the parties."

The Supreme Court in *Allison*, 481 Mich at 438, indicated that an accumulation of snow and ice can, in certain circumstances, implicate a landlord's duty to keep common areas fit for the use intended. However, the circumstances in *Allison* were not so egregious as to implicate the duty. *Id.* at 430. The Court stated:

> Plaintiff's allegation of unfitness was supported only by two facts: that the lot was covered with one to two inches of snow and that plaintiff fell. Under the facts presented in this record, we believe that there could not be reasonable differences of opinion regarding the fact that tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles. Accordingly, plaintiff has not established that tenants were unable to use the parking lot for its intended purpose, and his claim fails as a matter of law.
>
> While a lessor may have some duty under MCL 554.139(1)(a) with regard to the accumulation of snow and ice in a parking lot, it would be triggered only under much more exigent circumstances than those obtaining in this case. The statute does not require a lessor to maintain a lot in an ideal condition or in the most accessible condition possible, but merely requires the lessor to maintain it in a condition that renders it fit for use as a parking lot. Mere inconvenience of access, or the need to remove snow and ice

from parked cars, will not defeat the characterization of a
lot as being fit for its intended purposes. [*Allison*, 481 Mich
at 430.]

I simply cannot find this case materially distinguish-
able from *Allison*. First, as noted by the majority, the
principles from *Allison* apply not just to parking lots
but to all common areas on leased premises, including
the stairway at issue here. Second, plaintiff's assertion
of unfitness was based on alleged facts similar to those
set forth in *Allison*, i.e., she relied solely on the alleged
facts that the stairs were icy and that she fell.

Finally, like the parking lot in *Allison*, the stairway
here was suitable for its intended use. The *Allison*
Court stated that "[a] parking lot is generally consid-
ered suitable for the parking of vehicles as long as the
tenants are able to park their vehicles in the lot and
have reasonable access to their vehicles." *Id.* at 429.
The Court added:

> A lessor's obligation under MCL 554.139(1)(a) with
> regard to the accumulation of snow and ice concomitantly
> would commonly be to ensure that the entrance to, and the
> exit from, the lot is clear, that vehicles can access parking
> spaces, and that tenants have reasonable access to their
> parked vehicles. Fulfilling this obligation would allow the
> lot to be used as the parties intended it to be used. [*Allison*,
> 481 Mich at 429.]

The Court ultimately concluded:

> We recognize that tenants must walk across a parking
> lot in order to access their vehicles. However, plaintiff did
> not show that the condition of the parking lot in this case
> precluded access to his vehicle. The Court of Appeals erred
> in concluding that, under the facts presented, the parking
> lot in this case was unfit simply because it was covered in
> snow and ice. [*Id.* at 430.]

Similarly, plaintiff in this case did not show that the condition of the stairway precluded her ability to use the stairway to access different levels of the building. Unlike the plaintiff in *Allison*, who fell on his first encounter with the parking lot, plaintiff in this case had already successfully negotiated the steps, not just one other time but *three* times, having encountered the same icy condition the previous day. The stairway was not rendered unfit for its purpose simply because of the presence of some amount of ice that required a careful navigation of the steps.

In my opinion, the present case is not materially distinguishable from *Allison* and I therefore conclude that defendant was entitled to summary disposition.[1]

I would reverse and remand this case for entry of judgment in favor of defendant.

---

[1] I reject the majority's indication that *Allison* may somehow be distinguishable because "[w]alking in a parking lot is secondary to the parking lot's primary use." A person must be able to reasonably access his or her vehicle in order for a parking lot to be serviceable. The *Allison* Court explicitly recognized this. *Allison*, 481 Mich at 429. Finally, I note that this appeal solely involves the application of MCL 554.139(1)(a) and I therefore do not reach the question whether the staircase was "unreasonably dangerous," an inquiry related to a common-law premises liability claim. See, e.g., *Royce v Chatwell Club Apartments*, 276 Mich App 389, 391; 740 NW2d 547 (2007).